IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UTICA MUTUAL INSURANCE COMPANY,**

        Plaintiff,

v.                                                                       CIVIL ACTION NO. 2:06cv487

**ATLANTIC FOUNDATIONS, INC.,**

        Defendant.

*MEMORANDUM OPINION & ORDER*

This matter is before the Court on Atlantic Foundations, Inc's. ("Defendant"), Motion to Dismiss the Complaint of Utica Mutual Insurance Company ("Plaintiff"). For the reasons stated below, Defendant's Motion to Dismiss is **DENIED.**

**I. FACTUAL AND PROCEDURAL HISTORY**

This matter stems from Plaintiff's claim for contractual indemnity for sums paid by Plaintiff on behalf of its insureds, Grap Equipment, Inc. ("Grap"), and Anthony Kelly ("Kelly") to Benjamin W. Porter ("Porter") for injuries Porter sustained in an accident at a construction site of the Madison Place Project in Suffolk, Virginia. Atlantic Foundations, Inc. ("Atlantic"), had entered into a subcontract with Marsha Lynn Building Corp, Inc., the general contractor, to install concrete foundations. Grap is an equipment leasing company which leases concrete pump trucks and operators to contractors and subcontractors. On April 16, 2003, Atlantic contacted Grap to request the services of a pump truck and operator for that same day at the Madison Place project. Grap agreed to lease a truck and operator Kelly, to Atlantic. Atlantic had leased pump trucks and operators from Grap beginning in the year 2000 and had entered into such leases nearly 60 times in the 10-month period prior to the accident on April 16, 2003. Utica alleges that

Grap's custom and practice for each rental to Atlantic was for the operator to fill out a lease contract at the work site that reflected the date, time, location, and other specific information pertaining to that job. The lease agreement, known as the pump ticket, would then be signed by a representative of Atlantic at the site. However, the pump ticket for use of the pump truck and operator on the April 16, 2003 date was never signed by Atlantic. Atlantic states that the pump ticket was never even delivered to Atlantic.

Utica states, however, that of the nearly 60 equipment/operator rental agreements between Grap and Atlantic during the 10 month period prior to the April 16, 2003, date of the accident, an employee had signed all but five of the pump tickets. Furthermore, according to Utica, the same pump ticket form has been used by the parties throughout their course of dealing. The terms and conditions of the lease agreement are set forth on the reverse side of the form and includes the indemnification provision at issue in this case.

Pursuant to the parties' agreement over the telephone, the pump truck and operator leased to Atlantic by Grap were on the construction site on April 16, 2003. A ready mix concrete truck provided by Capital Concrete together with an operator, Porter, was also present on site. Porter was responsible for pouring cement from the cement truck into the hopper at the back of the pump truck. Under the terms of the lease agreement, Atlantic had exclusive supervision and control over the equipment and operator during the time they were on the site. Keith Withrow ("Withrow"), Atlantic foreman at the site, directed Kelly's operation of the leased equipment. In the underlying Porter litigation, Porter alleged that, while the boom was being moved in accordance with Withrow's direction, it came into sufficient proximity to overhead power lines to cause the electrical current to flow through the pump truck and cement truck and into his

body. Porter claimed that he suffered injuries as a result of the accident.

In the Porter Litigation, Porter filed a Motion for Judgment against Grap, Kelly, and Atlantic in the Circuit Court for the City of Suffolk, Virginia. Porter's Motion, which was subsequently amended, alleged that (1) Kelly was negligent and that Grap was vicariously liable for his negligence; (2) that Grap was negligent in training and/or supervising Kelly; and (3) that Withrow, as an employee of Atlantic, negligently directed Kelly to move the boom into contact with or close proximity to the power lines and that Withrow was acting in the course and scope of his employment with Atlantic. Porter alleged that he was entitled to damages in the amount of $10,000,000. Upon receipt of service in the Porter Litigation, Grap made a timely demand that Atlantic defend and indemnify it and Kelly pursuant to the terms of the lease agreement. Atlantic rejected this demand as well as a demand on behalf of Grap and Kelly for defense and indemnification. Pursuant to a liability insurance policy to Grap as the named insured and Kelly as an additional insured, Utica has a duty to defend and indemnify Grap and Kelly with respect to the Porter Litigation. Prior to trial in the Porter Litigation, Utica, on behalf of Grap and Kelly, advised Atlantic that it intended to enter into a settlement with Porter unless Atlantic provided a defense and indemnity. Atlantic refused to provide a defense and indemnity. Utica negotiated a settlement of Porter's claims against Grap and Kelly for the sum of $750,000. Grap and Kelly did not specifically admit liability in connection with the settlement. Atlantic negotiated a separate settlement with Porter. Porter agreed to release his claims against Atlantic in exchange for payment of the settlement amount also for the sum of $750,000. Utica, as subrogee, claims that it is entitled to indemnity from AFI pursuant to the terms and conditions of the pump ticket/lease agreement with AFI.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court will grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)). A court reviewing a motion to dismiss relies solely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). In a motion to dismiss, the court considers the facts in the light most favorable to the plaintiff, and assumes that the facts alleged in the plaintiff's complaint are true. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 229 (4th Cir. 2004) (citing *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir.1993)).

If the parties present and the court does not exclude matters outside the pleadings such as documents and deposition transcripts, the motion to dismiss is treated as one for summary judgment. Fed. R. Civ. P. 12(c); *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004) (citing *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 n.7 (4th Cir. 1988)).

## III. DISCUSSION

A. **Va. Code § 11-4.1**

Defendant first asserts that the indemnity provision at issue is void under Va. Code Ann. §11-4.1(2006). However, Plaintiff responds that Section 11-4.1 is not applicable to the contract between Atlantic and Grap. Section 11-4.1 provides, in pertinent part that:

> Any provision contained in any contract relating to the construction . . . of a building . . . by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury . . . suffered in the course of the performance of the contract, caused by or resulting solely from the negligence of such other party. . . is against public policy and void.

Va. Code Ann. § 11-4.1.

The Court agrees with Plaintiff's assertion. Defendant misinterprets the application of the statute. By its very terms, the statute would only apply to an agreement where the contractor performing the work, in this case, Grap, proposed to indemnify another party, in this case, Atlantic, for it's sole negligence. That is not the case here. The indemnity agreement provides as follows:

> INDEMNIFICATION: Lessee's [Atlantic] agree that equipment and all persons operating such equipment including Lessor's [Grap] employees, are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save Lessor, its employees and agents harmless from all claims for death aor injury to persons, including Lessor's employees, and from all loss, damage or injury to property, or its loss of use including the equipment, arising in any manner out of the Lessee's operation. Lessee's duty to indemnify hereunder shall include all costs or expenses arising out of claims specified herein, including all court and/or arbitration costs, filing fees, attorneys' fees and cost of settlement. Lessee shall not be required to indemnify Lessor for its sole negligence except for loss of use, but Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees hereunder shall be limited to the amount of Lessor's liability insurance.

As noted by Plaintiff, Section 11-4.1 does not bar an indemnity agreement in favor of the party furnishing the work under the contract, as Grap did in this case, by Atlantic, the other party to the contract. Section 11-4.1 is simply not applicable to the indemnity agreement at issue here.

5

Moreover, even if the Court found that the statute was applicable in this case, it does not void the alleged agreement. The statute voids indemnification against "liability for damage arising out of bodily injury . . . suffered in the course of the performance of the contract, **caused by or resulting solely from the negligence of such other party**." Va. Code Ann. § 11-4.1 (emphasis added). This would require a finding of damages resulting "solely from the negligence of such other party". There has been no allegation of "sole negligence" on the part of any party, as required by the statute in this case. As a matter of fact, Plaintiff and Defendant have both entered into separate settlement agreements with Porter avoiding specific assignment of negligence. Accordingly, the Court finds that Section 11-4.1 does not bar the present action.

**B.     Public Policy**

Defendant next argues that the alleged indemnity agreement is barred by Virginia public policy. Specifically, Defendant argues that indemnity agreements that purport to indemnify a party for its own future acts of negligence with respect to personal injury are void against public policy. In response, Plaintiff asserts that Virginia law permits the enforcement of and Virginia Courts have upheld, indemnity agreements similar to the one at issue in this case.

Defendant cites the holding in *Heitt v. Lake Bancroft Community Association, Inc.,* 244 Va. 191, 418 S.E.2d 894 (1992), in support of its assertion that in Virginia, public policy prohibits Grap from shielding itself from liability pursuant to an indemnity agreement. In *Heitt*, a triathalon participant signed a waiver that released the Community Association from any liability resulting from the race. The participant was subsequently injured when diving into a lake. The court in *Heitt* followed its decision in *Johnson's Adm'x v. Richmond and Danville R.R. Co.,* 86 Va. 975, 11 S.E. 829 (1890), which held that quarry worker's pre-injury release of

6

liability for future negligent acts by the railroad was against public policy and void. In its holding, the *Heitt* Court explained that case law in the Commonwealth over the past hundred years has not altered the holding in *Johnson* and therefore, based on *Johnson,* concluded that the pre-injury release provision signed by *Heitt* was prohibited by public policy and thus, it is void. *Id* at 897.

However, the facts in *Heitt* are distinguishable from the instant case. In contrast to *Heitt*, the agreement at issue here is not between the injured party and the tortfeasor. Rather, the agreement is between Atlantic and Grap, two parties being held liable for injuries to Porter, the injured party. Moreover, in contrast to *Heitt*, where the court upheld the indemnity agreement, the injured party could have had no possibility of recovery, in this case, upholding the indemnity agreement does not circumvents Porter's ability to recover for his injuries. The parties have settled with Porter and he has been compensated for his injuries. Thus, again, contrary to *Heitt,* the central issue in the instant case is the apportionment of costs and liability between the tortfeasors, two established business entities which on numerous occasions entered into lease agreements containing the indemnity provision at issue. *See Green v. Sauder Mouldings, Inc.,* 345 F. Supp. 610, 611 (E.D. Va. 2004) (stating that the "court could find nothing in Virginia law which prohibited two sophisticated business entities from negotiating an indemnity provision in a lease contract"). In that regard, the Court finds that the indemnity agreement does not violate the public policy embraced in *Heitt.*

Moreover, as Plaintiffs have aptly pointed out, there is significant authority in Virginia enforcing indemnity agreements similar to those of the instant case. For example, in *Safeway, Inc., v. DPI Midatlantic, Inc.*, 270 Va. 285, 619 S.E.2d 76 (2005), the Virginia Supreme Court

7

enforced a contractual indemnification agreement between an employer and a third party, a grocery store, for the injuries of plaintiff.  Moreover, in a case dealing with the indemnity agreement for liability caused by the conduct of subcontractors, the court in *Richmond, Fredericksburg & Potomac Railroad Co. v. Hughes-Keegan, Inc.,* 207 Va. 765, 152 S.E.2d 28 (1967), held that an indemnity provision within a contract between the contractor and the railroad to do work on the railroad was valid.  The provision stated that the contractor would indemnify the railroad from any and all loss, claims and damages.  A railroad employee was injured as a result of an accident.  Though the holding did not include public policy arguments, the court held that the contractor was obligated to indemnify the railroad for damages resulting from the employee's injuries.  *Id.* at 28-29.  Given the governing caselaw upholding indemnity agreements between joint tortfeasors in the context where the issue is one of allocation of damages as is the case before us, this Court finds that the alleged agreement is not barred by public policy.

**C.    Statute of Frauds**

Finally, Defendant argues that Plaintiff's claims are barred by the Virginia Statute of Frauds because Defendant did not sign the April 16, 2003 pump ticket which contains the indemnification agreement at issue.  The Virginia Statute of Frauds provides in pertinent part:

> Unless a promise, contract, agreement . . . is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases: ....
> 4.    To charge any person upon the promise to answer for the debt, default or misdoing of another.

Va. Code Ann. § 11-2 (2006).  Defendant argues that in order to charge Defendant for the misdoings and debts of Plaintiff's insureds, the alleged agreement needs to be in writing and

8

signed by Defendant. Defendant also notes that Plaintiff fails to allege that the pump ticket was even delivered to Defendant. Plaintiff counters that Defendant misconstrues the provision in the Statute pertaining to promises "to answer for the debt, default or misdoings of another." Va. Code Ann. §11-2(4). Plaintiff also asserts that the governing case law establishes that the promise must be to answer to a creditor for the debts of another. Specifically, Plaintiff argues that the Statute applies to guaranty agreements and similar promises whereby a third party promises a creditor that it will satisfy a debtor's obligation and that the Statute does not apply where, at the time of the agreement, there is no creditor and no debt the promissor might agree to pay. Therefore, Plaintiff argues, the Statute does not apply here, where the agreement runs only between the promissor and the prospective debtor and does not provide a creditor with recourse against the promissor.

    In its review of the governing case law, the Court found no Virginia Supreme Court case with substantially similar set of facts as those present in the instant case. However, Virginia law dictates that, "[e]very collateral promise to answer for the debt, default or misdoings of another person, is within the statute, and void if not in writing; but original undertakings need not be in writing, not being within the statute." *Lawson v. States Construction Company, Inc.,* 193 Va. 513, 69 S.E.2d 450, 453 (1952). Again, Plaintiff argues that in this case, the indemnity agreement is an original undertaking between the parties not an answer for the debt another fails to pay. Defendant argues that the Statute applies beyond a debtor creditor situation and contemplates the situation in the present case where one party is called to answer for the liability of another.

    In support of its argument, Defendant first cites *Law v. Law,* 922 F. Supp. 1106 (E.D. Va.

9

1996). In *Law*, plaintiff, a widow, sued her husband's father, defendant, for mishandling the estate of her husband, decedent. Plaintiff alleged that defendant made an oral promise that he would personally pay for decedent's funeral expenses and all of his legal debt's, and as administrator of the estate, distribute all estate assets to plaintiff. The court, *sua sponte* raised the Virginia Statute of Frauds issue. *See id* at 1113. Citing the Virginia Statute of Frauds Section 11-2, the court noted that "it appears on the face of the pleadings . . . the provisions of the Virginia Statute of Fraud apply to plaintiff's claim." *Id*. However, a closer reading of *Law* shows that the court did not directly hold that the Statute barred the action. The court instead ordered the plaintiff to set forth evidence that the Statute of Frauds did not bar the action on the alleged oral contract. *Id*. Moreover, as noted by Plaintiff, in contrast to the instant case, at the time the parties entered into the agreement in *Law*, the decedent's debts were fixed and determined. At the time the parties entered in the lease agreement in this case, no fixed debt to assume existed. Rather, the alleged agreement only promises to defend against liability for undetermined future claims for death or injury to persons, damage or injury to property, including equipment arising out or Lessee's operation. Therefore, the Court finds little support in *Law* for Defendant's argument.

      Defendant also cites *Chapman v. Ross,* 12 Leigh 565, 39 Va. 565 (1841). However, the Court finds that this case is not directly on point and may actually support Plaintiff's assertion that the Statute does not apply in this case. Defendant contends that the Chapman court held that the alleged contract was not within the Statute of Frauds but only because it did not contain an indemnity promise to pay for the 'misdoings' of another. However, the court's analysis focused on a completely different issue. The court examined an alleged oral agreement between a seller,

landowner and prospective buyer wherein the seller promised to indemnify the buyer in the event of damages caused by the construction of a dam by a downstream property owner acting within his legal right. The Virginia Supreme Court held the oral agreement to indemnify was not within the Statute of Frauds.

Contrary to this case, the critical issue in *Chapman* was not whether the seller had a duty to indemnify despite the lack of a writing. Rather, the court's analysis focused on whether the defendant's duty included a duty to defend against unlawful acts as well as lawful acts. The court held that the promise to indemnify, on the defendant's part, was, upon a fair construction of the evidence, nothing more than an indemnity against the **lawful** acts of the downstream property owner constructing the dam. The court held that the defendant did not promise to defend against the unlawful acts of the downstream property owner . *Id.* The court remanded the case for a new trial noting that no evidence was presented regarding whether damages were caused by lawful acts of downstream property owner. *Id.* Furthermore, *Chapman* held that the seller's alleged oral promise was not barred by the Statute because there was no need for a writing to defend in the event of the lawful acts of the downstream property owner. Again, *Chapman* offers little to support Defendant's proposition that the Statute bars the alleged agreement in this case.

The reasoning in two Virginia Supreme Court cases, however, offers the Court guidance in the instant case. In *Alphin v. Lowman*, 115 Va. 441, 79 S.E. 1029 (1913), the court found that the Statute of Frauds did not apply because the alleged indemnity agreement between plaintiff and defendant in that case was not a promise to answer for the maker's debt to the holder of the note, or that the oral agreement was not an assurance to the creditor that the debt would be paid.

Similarly, in the instant case, at the time the alleged agreement was made, Grap had no debt owed to a creditor for Atlantic to assume. At that time there was only the potential for liability that Atlantic would presumably assume.

Moreover, in a more recent case, *Horace Mann Ins. Co. v. Government Employees Ins. Co.*, 231 Va. 426, 344 S.E.2d 906 (1986), the Virginia Supreme court examined whether the Statute of Frauds applied to an agreement between two insurance companies. In *Horace Mann*, plaintiff argued that defendant made an oral agreement to contribute to the costs of settlement claims against their mutual insured. *Id.* Defendant argued that plaintiff's claims were barred by the Statute of Frauds. Reasoning that the Statute of Frauds did not apply because when the agreement was made there was no determined and fixed damage amount, the court noted that, [w]hen the agreement was made, . . . Horace Mann [plaintiff] was not indebted to the claimants; only the potential of debt existed. Clearly, Gieco [defendant] was not promising to answer for a debt owed by Horace Mann. The Statute of Frauds, therefore, does not apply." *Id.* at 909. As noted, similarly in the instant case, the alleged indemnity agreement was not made at a time when there was a determined, fixed and liquidated debt owed by Grap that Atlantic promised to defend. In light of the governing caselaw, the Court finds that under Virginia law, Plaintiff's claims are not barred by the Statute of Frauds.

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**. The Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Order to Counsel for Plaintiff and Defendant.

    **IT IS SO ORDERED**.

_____/s/_____
RAYMOND A. JACKSON
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 18, 2007

_____