IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UTICA MUTUAL INSURANCE COMPANY,**

   **Plaintiff,**

v.                     **Civil Action No. 2:06cv487**

**ATLANTIC FOUNDATIONS, INC.,**

   **Defendant.**

*MEMORANDUM OPINION AND ORDER*

   This matter is before the Court on Atlantic Foundations, Inc.'s ("AFI") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination. For the reasons below, AFI's motion for summary judgment is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

   The instant case arises out of an incident at a construction site for the Madison Place real estate development project in Suffolk, Virginia. AFI was the subcontractor at the site responsible for installing concrete foundations. AFI leased concrete pump trucks and operators from Grap Equipment, Inc. ("Grap"). Grap and AFI had a flat rate arrangement for these rentals. The terms and conditions for these rentals were detailed on the lease contract for each rental, known as a

pump ticket. Normally, Grap's truck operator would present the pump ticket to an AFI representative at the site for a signature.

The incident in question occurred on April 16, 2003. On that date, a Grap pump truck and operator, Anthony Kelly ("Kelly") were at the site. Keith Withrow ("Withrow") was the AFI foreman on the site. During the pouring of the concrete, the boom from the pump truck came into close proximity to overhead power lines, causing electricity to flow through the boom. Withrow was fatally injured, and Benjamin Porter ("Porter"), another worker at the site, was severely injured. Porter filed suit against Grap, Kelly, and AFI in state court. Plaintiff Utica Mutual Insurance Co. ("Utica") is Grap's and Kelly's liability insurance carrier. Utica and AFI's insurer entered into separate settlements with Porter.

Utica filed the instant complaint on August 29, 2006, as subrogee of Grap and Kelly. Utica alleges that according to the terms of the pump ticket, AFI has a duty to indemnify Grap and Kelly for the expenses incurred in connection with the Porter litigation and settlement. AFI filed a motion to dismiss on September 21, 2006. The Court denied the motion to dismiss on January 18, 2007. *Utica Mut. Ins. Co. v. Atlantic Founds., Inc.*, No. 2:06cv487, 2007 WL 190682, at *1 (E.D. Va. Jan. 18, 2007). AFI filed the instant motion for summary judgment on June 11, 2007. Utica filed a response on June 22, 2007. AFI filed a reply on June 29, 2007.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am.,*

*Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) (stating that "[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.")). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### III. DISCUSSION

AFI's argument for summary judgment is that Grap materially breached its duty under the pump ticket contract to not operate its equipment within seventeen feet of an electrical line, thereby preventing Grap from enforcing the indemnity provision.[1] The pump ticket identifies Grap as the "Lessor" and the customer, AFI, as the "Lessee." (Utica Mut. Ins. Co.'s Mem. in

---

[1] AFI disputes that the terms of the pump ticket apply to Utica's claims. However, for the purposes of the instant motion, AFI assumes that those terms apply. Accordingly, for the purposes of this Memorandum Opinion and Order, the Court will assume without deciding that the pump ticket in question is a valid contract between Grap and AFI and that its terms are applicable.

3

Opp'n to Atlantic Founds., Inc.'s Mot. for Summ. J. at Ex. A [hereinafter Pump Ticket].) The indemnification paragraph states that:

> INDEMNIFICATION: Lessee's agree that the equipment and all persons operating such equipment including Lessor's employees, are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save Lessor, its employees and agents harmless from all claims for death or injury to persons, including Lessor's employees, and from all loss, damage or injury to property, or its loss of use including the equipment, arising in any manner out of the Lessee's operation. Lessee's duty to indemnify hereunder shall include all costs or expenses arising out of claims specified herein, including all court and/or arbitration costs, filing fees, attorney's fees and cost of settlement. Lessee shall not be required to indemnify Lessor for its sole negligence except for loss of use, but Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees hereunder shall be limited to the amount of Lessor's liability insurance.

(*Id.* at ¶ 2.) The pump ticket also contains provisions governing the manner AFI was to control Grap's equipment:

> IN CAREFUL MANNER: Lessee has absolute control of the site conditions. When Equipment is on the job site, control of the Equipment and Equipment operator passes to Lessee and such control will terminate only when the Equipment operator and the Equipment have departed and vacated from the job site. At all times when Lessee retains control of the Equipment and the Equipment operator, Lessee shall have the duty of, and shall assume the liability for, ensuring that the conditions of the job site are safe for the operation of the Equipment by the Equipment operator. In addition, Lessee shall: (1) use the Equipment in a safe and careful manner and in compliance with all federal, state, municipal laws and ordinances and operate the job site in accordance with applicable regulations of the Occupational Safety and Health Act (OSHA); and (2) instruct its crew on safety practices when working around the Equipment. Lessee further agrees to indemnify Lessor and the Equipment operator from any claims, losses or liabilities arising from the handling of the Equipment if such claim, losses or liabilities resulted from Lessee's failure to maintain a safe working environment.

(*Id.* at ¶ 3.) Finally, the provision at issue in the instant motion for summary judgment provides that, "GRAP EQUIPMENT, INC. cannot operate a boom pump within 17 feet of an electrical line, or in any unsafe condition." (*Id.* at ¶ 4.)

Contracts are to be construed as written, "and the contract becomes the law of the case unless the contract is repugnant to some rule of law or public policy." *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995). "It is well-established that when a contract is clear and unambiguous, it is the duty of the court, and not the jury, to decide the meaning of the contract." *Id.* In addition, "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Id.* at 135-36, 452 S.E.2d at 662; *see also Barber v. VistaRMS, Inc.*, 272 Va. 319, 329, 634 S.E.2d 706, 712 (2006). Finally, "When two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done." *Ames v. Am. Nat'l Bank of Portsmouth*, 163 Va. 1, 39, 176 S.E.204, 217 (1934); *see also Plunkett v. Plunkett*, 271 Va. 162, 168, 624 S.E.2d 39, 42 (2006).

AFI alleges that Utica cannot enforce the indemnification provision because Grap materially breached the section of the contract stating that it "cannot operate a boom pump within 17 feet of an electrical line . . . ." (Pump Ticket at ¶ 4.) As an initial matter, Utica, as a subrogee of its insured, Grap, steps into Grap's shoes and has the same rights as Grap. *Reynolds Metals Co. v. Smith*, 218 Va. 881, 883, 241 S.E.2d 794, 796 (1978). AFI maintains that Grap's material breach prevents it from enforcing the indemnity provision because under Virginia law,

"Generally, a party who commits the first breach of a contract is not entitled to enforce the contract." *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997).

The Court finds that Grap did not materially breach the terms of the pump ticket. The provision of the pump ticket discussing Grap's inability to operate the boom pump within seventeen feet of an electric line is not a promise. In general, a promise is "[t]he manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something." Black's Law Dictionary 1249 (8th ed. 2004). The Restatement (Second) of Contracts defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2 (1981). Virginia applies an objective theory of contracts. *See Ames*, 163 Va. at 38-39, 176 S.E. at 216-17. Consistent with that approach, the Restatement provides that, "A promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct." Restatement (Second) of Contracts § 2 cmt. b. (1981).

The provision at issue states that, "GRAP EQUIPMENT, INC. cannot operate a boom pump within 17 feet of an electrical line, or in any unsafe condition." (Pump Ticket at ¶ 4.) The critical language in this sentence is the word "cannot." In order to constitute a promise, this sentence must signal a commitment by Grap that it will "act or refrain from acting in a specified way . . . ." Restatement (Second) of Contracts § 2 (1981). However, the use of the word "cannot" signals that the sentence is meant as a limitation on the capability of Grap, as opposed to an affirmative manifestation of Grap's intention not operate a boom pump in close proximity

to an electrical line. Indeed, the dictionary definition of "cannot" supports this interpretation. "Cannot" is defined as "can not." Webster's Third New International Dictionary 372 (1981). "Can" in the relevant context is defined as to "be physically or mentally able to . . . ." *Id.* at 323. The "cannot" language in the pump ticket does not convey any intention to act in a given way; rather, it reflects restrictions on Grap's ability to operate the pump truck. It is meant to inform the lessee, AFI, that while AFI has absolute control over the Grap's equipment, there are certain activities that Grap is unable to perform. The selection of different language, such as "will not," would have been a clear manifestation of an intention not to act in a certain manner. In contrast, the word "cannot" fails to demonstrate such an intention.

The Court's interpretation of the "cannot" language serves the important contractual interpretation goal of giving meaning to as much of the contract as possible. *See D.C. McClain, Inc.*, 249 Va. at 135-36, 452 S.E.2d at 662. The pump ticket contains multiple provisions stating essentially that once on site, Grap's equipment and its operator are under AFI's direction. For example, the indemnification provision begins by stating that the equipment and operator "are under Lessee's exclusive jurisdiction, supervision and control . . . ." (Pump Ticket at ¶ 2.) The next paragraph states that, "When Equipment is on the job site, control of the Equipment and Equipment operator passes to Lessee and such control will terminate only when the Equipment operator and the Equipment have departed and vacated from the job site." (*Id.* at ¶ 3.) Clearly, AFI had the "exclusive" right to operate the pump truck on the construction site. "Exclusive" is defined as "limiting or limited to possession, control, or use . . . ." Webster's Third New International Dictionary 793. Once the equipment is operating on the site, Grap no longer had any contractual right of control over it by virtue of the "exclusive" language.

7

Reading a promise on behalf of Grap not to operate the pump truck in a certain manner would conflict with AFI's clearly-stated exclusive right of control. It would be senseless for the contract to state that AFI has total, exclusive control over the equipment and operator in one provision, and then provide for promises by Grap concerning the method of operation in the next provision. The better way to interpret the contract is to read the exclusive control language to mean exactly what it states: that AFI has exclusive control over the equipment and operator on site. The provision limiting Grap's ability to operate a boom pump near an electrical line can be seen as a limitation on the equipment's ability. In effect, Grap is promising a pump truck and operator to AFI to use however it wants at the site, subject to the limitation that AFI cannot operate Grap's equipment within seventeen feet of an electrical line.

It is true that the electrical line provision falls in a section of the pump ticket labeled "LESSOR'S DUTY." (Pump Ticket at ¶ 4.) This section starts out with the central promise that Grap makes in the contract, by stating, "Lessor agrees to provide . . . [o]ne concrete pump, one operator and concrete transmission line necessary for the job, which must be specifically ordered." (*Id.*) The electrical line sentence can be interpreted consistently with the Lessor's Duty heading by reading it to say that Grap has the duty to provide a pump truck that *cannot* be operated within seventeen feet of an electrical line. The Court's interpretation of the "cannot" language makes this sentence a limitation on Grap's duties, and not an independent promise. Therefore, its placement in the "Lessor's Duty" section of the contract is logical. Moreover, a general rule of contractual interpretation is that, "[W]hile labels may be helpful in determining contractual intent, they are not controlling." *Donnelly v. Donatelli & Klein, Inc.*, 258 Va. 171, 180, 519 S.E.2d 133, 138 (1999).

In conclusion, the Court interprets the paragraph in the pump ticket stating, "GRAP EQUIPMENT, INC. cannot operate a boom pump within 17 feet of an electrical line, or in any unsafe condition" as a limitation on the service provided by Grap, and not as an independent contractual promise. (Pump Ticket at ¶ 4.) Therefore, Grap could not have breached this provision. AFI had "exclusive jurisdiction, supervision, and control" over Grap's equipment and operator on the site. None of this is to say that Grap contractually relieved itself of the ability to be negligent. Negligence can occur regardless of what parties to a contract stipulate in advance. However, as the Supreme Court of Virginia has recently made clear, parties are free to pre-determine potential liability for negligence via indemnification agreements. *Estes Express Lines, Inc. v. Chopper Express, Inc.*, _ Va. _, 641 S.E.2d 476, 479-80 (2007).

### IV. CONCLUSION

For the foregoing reasons, AFI's motion for summary judgment is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED**.

_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 7, 2007